IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re: ) | |
| ) | Case No. 10-40891-drd7 |
| Shawn Allen Knoblock and ) | |
| Jennifer Ann Knoblock (Silk), ) | |
| ) | |
| Debtors. ) | |

ORDER

Before the Court is the Motion of Discharged Debtors to Enforce Discharge Injunction, Impose Sanctions for Civil Contempt and Related Relief (the "Motion") filed by Shawn and Jennifer Knoblock (the "Debtors"). Specifically, the Debtors are seeking an order 1) declaring that any claims held by Jordan Hall, Tina Hall, and Bobby Hall (collectively, the "Claimants") are discharged, 2) directing the dismissal of the pending cause of action before the Circuit Court of Johnson County, Missouri (the "State Court Action"), and 3) imposing sanctions for the willful violation of the discharge injunction. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§1334(b), 157(a) and 157(b)(1). This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I) and (J). For the reasons set forth below, the Motion is denied.

I.  BACKGROUND

The parties have stipulated to the following facts. In 2007, Jordan Hall ("Hall"), the 9-year-old daughter of Tina and Bobby Hall, was injured while riding

1

an all terrain vehicle on the Debtors' property with their permission. She suffered serious injuries to her head, face, jaw and teeth when the vehicle went off a retaining wall. The Debtors were insured for incidents of this nature by American Family Mutual Insurance Company ("AFMI"); their policy limit was $300,000.

In 2010, the Debtors filed for relief under Chapter 7. Tina and Bobby Hall were identified in the Debtors' Schedules as unsecured creditors with a claim for an unknown amount. No objections to discharge or complaints to determine dischargeability were filed in the bankruptcy case. On June 9, 2010, the Court entered a Discharge Order and the case was subsequently closed.

The Hall's personal injury claim was discharged.

In October, 2015, at the age of 17, Hall contacted an attorney to pursue a claim for her bodily injuries against AFMI. She turned 18 in July of 2016. In November, 2015, Hall's counsel demanded $750,000 in damages from AFMI for her injuries, but subsequently offered to settle Hall's claim for the policy limits. At first, AFMI did not pay. However, AFMI ultimately agreed; the policy limit of $300,000 was paid to Hall in two installments.

In January, 2017, Hall brought a civil suit in the Circuit Court of Johnson County, Missouri, to have her lifetime damages judicially determined (the "State Court Action"). Because Missouri law required her to establish the Debtors' liability before pursuing AFMI, Hall named the Debtors as co-Defendants. The case

was set for a jury trial on June 12, 2018. Extensive discovery took place, including the Debtors' depositions. The Debtors did not raise the defense of discharge in their Answer or during pretrial matters.

In May of 2018, the parties agreed to and entered into a Contract to Limit Recovery Pursuant to Missouri Revised Statutes §537.065 (the "Contract"). The Contract provided that, inter alia, at no time would Hall seek execution of any judgment she obtained against the Debtors and would look to collection of any such judgment from a bad faith claim against AFMI. Additionally, the Debtors agreed to pursue a bad faith claim against AFMI for its mishandling of Hall's bodily injury claim. At the time the Contract was negotiated, neither the Debtors nor AFMI raised the issue that Jordan Hall's claim had been discharged by the bankruptcy.

About a week before the trial in the State Court Action, the Debtors' former bankruptcy counsel called Hall's counsel concerning the fact that she had been contacted by Shawn Knoblock about the necessity of his appearance at the trial, and to inquire about the status of the case. She was advised by Hall's counsel that, from his point of view, the Debtors' presence was not necessary since their depositions had been taken and the trial was on damages only. The Debtors' bankruptcy counsel subsequently called Hall's counsel back to inform him that in her opinion, the personal injury claim was discharged.

Thereafter, per their bankruptcy counsel's suggestion, the Debtors retained another bankruptcy attorney to represent them in connection with the State Court Action. Hall's counsel received a letter from that attorney advising that he had been retained by the Debtors and demanding that the trial be removed from the docket. Hall's counsel alerted the State Court of the alleged bankruptcy issue, and the case was taken off the trial docket. It has not been reset for trial.

In June, 2018, the Debtors filed a motion to reopen their Chapter 7 case for the purpose of filing the Motion. This Court entered its order reopening the case. The Debtors were granted leave to amend their answer in the State Court Action, and did so, including the affirmative defense of bankruptcy discharge.

In January of 2019, notice of the bar date was sent to all creditors in the reopened bankruptcy case. In January of 2020, the trustee filed her Notice of Abandonment in which she abandoned any interest in the Claimants' potential claim, stating that it was likely discharged as part of the original bankruptcy proceeding, and questioning whether it was property of the estate since it likely occurred post-petition. Thereafter, Hall filed a series of motions that makes clear that she intends to proceed with the pending State Court Action.

At no point since the discharge order was entered have the Claimants made demand on the Debtors for payment. No pleading filed with any court requests

payment from the Debtors, though the pending State Court Action does seek damages in excess of their insurance coverage.

The Debtors argue that the Claimants continue to seek money from them, even knowing that their claims were discharged, and even after having been paid the limit under the Debtors' policy. These actions, they posit, are willful and in violation of the discharge injunction.[1]

Hall asserts that she is not seeking any payment of funds from the Debtors or to enforce any debt against them. Rather, she is seeking to collect from AFMI for its alleged bad faith conduct in not timely settling her personal injury claim; the State Court Action would not result in any payment by, or demand for payment from, the Debtors. In addition, Hall contends that a discharge injunction does not bar a lawsuit against a discharged debtor as a prerequisite to recovering from that debtor's insurer.[2]

## II.  DISCUSSION

---

[1] An additional argument made by the Debtors in their Trial Brief is that the Contract is void as unconscionable and lacking consideration. The Contract is governed by Missouri law, and any determination of its validity should be made by the court in the State Court Action. In addition, this issue was not fairly raised in the Motion, nor was the relief originally requested. Accordingly, the Court will not address the validity of the Contract.

[2] Hall also asserts in her objection to the Motion that the underlying claim arose post-petition and therefore is not subject to the discharge. However, the parties have since stipulated that the claim was discharged, so this argument has no merit.

Under Bankruptcy Code §727(b), the discharge in a Chapter 7 case discharges the debtor from all debts that arose before the date of the order for relief. Section 524(a)(2) expressly provides that the discharge operates as a permanent injunction against the commencement or continuation of any action to collect, recover or offset such debt as a personal liability of the debtor. Put another way, a discharge in bankruptcy does not extinguish the debt itself, but merely releases the debtor from personal liability. *In re Lang*, 398 B.R. 1, 4 (Bankr. N.D. Iowa 2008). It can still be collected from any other entity that might be liable. *Id.*

The vast majority of bankruptcy courts have held that §524(a)(2) does not bar suit against a debtor solely to determine liability in order to collect from a third party, such as the debtor's liability insurer. *See, e.g., Matter of Shonel*, 950 F. 2d 1301 (7th Cir. 1991); *In re Jet Florida Systems. Inc.,* 883 F.2d 970, 973 (11th Cir. 1989); *In re Christian*, 10 B.R. 548, 549 (Bankr. E.D. Mo. 1995); *In re Gibson*, 172 B.R. 47, 49 (Bankr. W.D. Ark. 1994); *In re Greenway*, 126 B.R. 253, 255 (Bankr. E.D. Tex. 1991); *In re McGraw*, 18 B.R. 140, 143 (Bankr. W.D. Wis 1982). They reason that the discharge injunction is not meant to affect the liability of third parties nor prevent establishing their liability by whatever means necessary. As the court aptly stated in *In re Lembke*, 93 B.R. 701, 703 (Bankr. D.N.D. 1988):

> It makes no sense legally or equitably for an insurer to escape insurance coverage for injuries caused by its insured merely by the happenstance of the insured's

6

> bankruptcy discharge. Such a result would be fundamentally wrong.

The most frequently used rationale by the courts for holding that claimants could proceed against discharged debtors in a limited capacity is that the detriment to the debtor is minimal where the insurance company must defend the action and pay any award. *In re Security Services, Inc.*, 203 B.R. 708, 711 (Bankr. W.D. Mo. 1996). In such cases, the courts have held that if the debtor's participation is merely nominal, *i.e.*, it is akin to participating as a witness in a case, there is no reason for the insurance company to receive a "discharge" on the debtor's coattails to the detriment of an injured person with a legitimate personal injury claim. *Id. See also In re Mann*, 58 B.R. 953, 958 (Bankr. W.D.Va. 1986)( "[w]ere we to not permit the state court action to proceed, the insurance company would in effect escape potential liability and be unjustly enriched."). Insurance companies could arguably collude with a debtor to file bankruptcy so that the insurer would escape liability.

This interpretation of the "personal liability" exception simply makes sense:

> By recognizing the limited exclusion from the broad sweep of the discharge injunction, (1) an allegedly aggrieved party will be allowed to prosecute a claim against a non-debtor third party; (2) a debtor will continue to be protected from the obligation to satisfy any personal liability that may result from the aggrieved party's actions; and (3) the insurance company will suffer no exposure greater than what it had agreed to in the insurance contract with a debtor. Any judgment against a debtor obtained in

7

>these circumstances is unenforceable against the Debtor by virtue of the Order of Discharge.

*In re Christian*, 180 B.R. at 549.

Courts addressing this issue consider whether allowing a discharged debtor to be named as a nominal party would frustrate the fresh-start policy embodied in the Bankruptcy Code. *See, e.g., In re Beeney*, 142 B.R. 360 (9th Cir. BAP 1992). In *Beeney*, the discharged debtor argued that allowing the lawsuit against him, even though it was solely to collect on an insurance policy, would interfere with his fresh start because his job as a truck driver might be put in jeopardy. The court rejected this argument as tenuous because of the numerous conditions that would have to be met for that to occur. In the present case, Jennifer Silk contends that if there is a judgment, then it will be in her name and would appear on her credit report. If she could not then be bonded, she argues, then she cannot be employed by the credit union, and would lose her job. Silk's argument is akin to *Beeney's* – tenuous, at best. No evidence was presented to support this hypothetical situation. Moreover, these more detailed assertions appear in the Debtors' briefing, not in the Stipulation of Facts. The latter contains only a conclusory one-line statement that the litigation would be detrimental to the Debtors' employment. In addition, Silk's argument goes to the issue of damages, not liability. Therefore, the Court finds that naming the Debtors in the State Court Action would not impede their fresh start.

The case law supports Hall's position that the discharge injunction does not prevent a tort claimant from pursuing a discharged debtor where the debtor is not exposed to liability as is the situation here. In Missouri, the obligation of the insurer to pay the injured plaintiff does not arise until the insured's obligation to pay has been finally determined by judgment against the insured. *Cotton v. Iowa Mutual Liability Insurance Co.,* 251 SW2d 246, 249 (1952). Through the State Court Action, the Claimants are attempting to do just that.

The parties voluntarily entered in the Contract which specifically protects the Debtors from personal liability: "Jordan Hall covenants and agrees that she will levy no execution of said judgment upon the personal assets of Shawn Knoblock and Jennifer Silk at any time except as provided herein, but will look to satisfaction of the judgment from any proceeds of a claim or claims against American Family Mutual Insurance Company and its agents, employees and attorneys…." Contract, ¶ 2. Indeed, the Debtors would have recourse should the Halls seek to recover from them in breach of the Contract.

The Debtors draw a distinction between the cases focusing on the establishment of liability and the State Court Action that involves "secondary liability" for bad faith. They contend that the §524(a) exception does not apply to a cause of action separate from the underlying injury where liability has already been found. They cite no cases that support their position. This Court, likewise, did not

9

find any authority making the distinction between actions against third parties grounded in contract (the insurance policy) or tort (bad faith). The controlling principle is that the discharged debtor be shielded from personal liability, not the substance of the litigation to which the debtor is named as a party. Besides, in the instant matter, there is not a significant difference, in substance, between a bad faith claim brought by the Debtors and a claim arising from their insurance contract. The Court finds no merit in the Debtors' argument.

The Debtors have argued that while the case law may support naming a discharged debtor as a nominal party to a lawsuit, it does not permit a judgment to be entered against that debtor. They cite no authority for that argument, and in fact, many of the cases cited previously hold that a judgment is permitted as a prerequisite to holding a third party liable. To hold otherwise would make the §524(a)(2) exception meaningless. They also appear to be arguing that by pursuing the bad faith claim against AMFI, the Claimants would be enforcing the judgment against the Debtors personally. That is simply another way of making the argument the Court has already rejected, namely that there is a legally significant distinction between a bad faith claim and one grounded in contract under the insurance policy.

The Debtors also assert that the Contract is an attempt to force them into reaffirming a discharged debt, and is therefore inconsistent with §524(c), relying on *Venture Bank v. Lapides*, 800 F. 3d 442, 444 (8th Cir. 2015). The *Lapides* case is

10

distinguishable in multiple ways. The key difference between that case and the present one, however, is that the creditor in *Lapides* applied pressure on the discharged debtor to sign agreements obligating him to personally repay the entire discharged debt. Here, Hall has indicated in her pleadings, in her correspondence, and in the Contract that she will not be seeking to recover from the Debtors personally. The parties have stipulated that no efforts have been made to collect from the Debtors thus far, and the Court finds no indication that Hall intends to deviate from that in the future.

### III.   CONCLUSION

Bankruptcy courts have consistently interpreted the discharge provision as allowing the determination of the debtor's liability in order to recover from a third party, and not the debtor. This Court will not depart from that precedent. Because of this Court's holding that the discharge injunction has not been violated, there is no need to address the Debtor's request for the imposition of sanctions.

The Motion is denied.

Dated:  April 2, 2021                  /s/ *Dennis R. Dow*
                                       THE HONORABLE DENNIS R. DOW
                                       UNITED STATES BANKRUPTCY JUDGE